ERIN E. SCHNEIDER (Cal. Bar No. 216114)
  schneidere@sec.gov
MONIQUE C. WINKLER (Cal. Bar No. 213031)
  winklerm@sec.gov
JEREMY E. PENDREY (Cal. Bar No. 187075)
  pendreyj@sec.gov
MARC D. KATZ (Cal. Bar No. 189534)
  katzma@sec.gov
DAVID ZHOU (NY Bar No. 4926523)
  zhoud@sec.gov
RUTH L. HAWLEY (Cal. Bar No. 253112)
  hawleyr@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL V. SHUSTEK and VESTIN MORTGAGE LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission (the "SEC") alleges:

## SUMMARY

1. Since at least 2012, **Michael Shustek** orchestrated a series of varied and complex fraudulent schemes that shared one common theme: He devised ways to enrich himself at the expense of those who invested in entities that he ran. As the CEO and day-to-day operator, Shustek exerted control over the two real estate investment trusts that bore the brunt of his misconduct, **Vestin Realty Mortgage I ("VRTA")** and **Vestin Realty Mortgage II ("VRTB")**. In many of

these misdeeds, Shustek acted in concert with another Shustek-owned-and-controlled entity, defendant **Vestin Mortgage LLC (the "Vestin Adviser")**, which acted as the investment adviser to, and manager of, VRTA and VRTB.

2. In one brazen plot, Shustek drained $29 million from VRTA and VRTB, and then funneled the money into his newer venture called The Parking REIT. In another maneuver, Shustek arranged for VRTA and VRTB enter into a complicated string of money-losing transactions in which the same six buildings were repeatedly re-sold for his and The Parking REIT's benefit. In a variation on the theme, Shustek also deceived the boards of directors of VRTA and VRTB—and violated his fiduciary duties to the entities—in two separate securities transactions, to get the companies to pay him almost $10 million. And Shustek repeatedly misled investors by causing VRTA and VRTB to make false and misleading statements in public securities filings—primarily to disguise Shustek's own self-dealing.

3. This Complaint seeks to hold Shustek accountable for his near-decade-long wrongdoing, which began less than six years after the SEC previously found that he had violated the securities laws. Specifically, the SEC seeks an order enjoining Shustek and the Vestin Adviser from further violations of the federal securities laws; prohibiting Shustek from serving as an officer or director of any public company; imposing a penny stock bar against Shustek; and requiring the Defendants to pay civil monetary penalties, and to disgorge their ill-gotten gains or unjust enrichment with prejudgment interest thereon.

## JURISDICTION AND VENUE

4. The SEC brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b), (d)], Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78u(d), (e)], and Section 209(d) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-9(d)].

5. The Court has jurisdiction over this action, and venue lies in this District, pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa], and 28 U.S.C. §

1391, and Sections 209(d), 209(e), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), 80b-14].

6. Defendants, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint. Certain transactions, acts, practices and courses of business that form the basis for the violations alleged in this Complaint occurred within Clark County, Nevada.

## DEFENDANTS

7. **Michael V. Shustek** is 62 years old and resides in Las Vegas, Nevada. He founded defendant Vestin Mortgage LLC, as well as several companies that invested in real estate-related assets and whose securities were sold to the public. In a 2006 Order, the SEC found that Shustek and two companies he controlled violated Sections 17(a)(2) and (3) of the Securities Act, and ordered Shustek, among other things, to cease and desist from further violations.

8. On December 9, 2019, Shustek entered into an agreement with the SEC, which provides that the running of any statute of limitations applicable to an action against Shustek by the SEC, including any sanctions or relief that might be imposed, is tolled for the period beginning on December 9, 2019 through March 9, 2020.

9. **Vestin Mortgage LLC** is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada. It is solely owned and controlled by Shustek, and is the manager of, and investment adviser to, VRTA and VRTB. It has no officers or employees other than Shustek.

## FACTUAL ALLEGATIONS

### A. Shustek Controlled the Entities Involved In the Misconduct.

10. Shustek controlled and operated an entire ecosystem of companies in which some businesses provided advice about investments, and others made the investments. One of his investment advisory companies was the Vestin Adviser. Together, Shustek and the Vestin Adviser controlled and advised VRTA and VRTB, which were publicly-traded, real estate investment trusts, or "REITs." In general, REITs are companies that own income-producing real estate or real estate-

related assets and distribute the majority of their income to their investors through dividends. According to their public filings, VRTA and VRTB generally invested in real estate mortgage loans and real property.

11. Per written agreements, Defendants Shustek and the Vestin Adviser were at all relevant times the managers to VRTA and VRTB. In addition, Shustek was the CEO, sole owner and only officer and employee of the Vestin Adviser. In practice, that meant Shustek himself made the investment decisions for VRTA and VRTB, and, for at least the last decade, he invested significant amounts of their assets into securities. During the seven-year period between 2011 and 2018, securities comprised more than 20% of VRTA's assets for six of the years, and more than 20% of VRTB's assets for four of the years. Since 2018, more than half of both companies' assets have been securities. Shustek and the Vestin Adviser received fees and other compensation for the advice they provided regarding securities investments.

12. As the CEO of VRTA and VRTB, Shustek approved and signed public filings made by VRTA and VRTB. From 2006 to 2015, VRTA filed public reports with the SEC and traded its securities on the Nasdaq Global Select Market ("Nasdaq"). VRTB, which also traded its securities on the Nasdaq, filed public reports with the SEC from 2006 until 2017.

13. After 2015 and 2017, respectively, the securities of VRTA and VRTB went from being traded on the Nasdaq to being traded on the over-the-counter ("OTC") market. Securities trade OTC because they do not meet the financial or listing requirements to list on a formal market exchange like the Nasdaq. Generally, they are low-priced and thinly traded and are traded via a broker-dealer network instead of a centralized exchange. But VRTA and VRTB continued to publish annual and quarterly reports to the public about their businesses and financial condition. Those filings, many of which were approved and signed by Shustek, were publicly posted on otcmarkets.com, and linked to on VRTA's and VRTB's websites.

14. This "Vestin" group of businesses was just one part of Shustek's corporate stable. He also controlled and ran a Nevada company called **MVP Realty Advisors, LLC ("Shustek Parking Advisers")**, which was jointly owned by VRTA and VRTB and operated as an investment adviser. Shustek and Shustek Parking Advisers, in turn, controlled and advised a private Maryland

corporation called **The Parking REIT**, which has its principal place of business in Las Vegas and primarily invests in parking facilities.

15. Although VRTA and VRTB and The Parking REIT were legally distinct entities with different shareholders, Shustek used his near-total control over all of the companies to repeatedly raid the assets of VRTA and VRTB to benefit The Parking REIT and to collect millions of dollars for himself along the way. As described in detail below, Shustek caused VRTA and VRTB to transfer away tens of millions of dollars and to lose money on real estate deals to benefit The Parking REIT. To conceal his fraudulent actions from VRTA's and VRTB's shareholders, Shustek signed off on dozens of false and misleading SEC and OTC filings for those two companies, and he also made misrepresentations to their respective boards of directors.

**B. Shustek Directed VRTA and VRTB to Transfer Almost $30 Million to Benefit The Parking REIT.**

16. As part of his scheme to use VRTA and VRTB—companies with both retail and institutional investors—as piggy banks for The Parking REIT, Shustek and the Vestin Adviser caused the two investment companies to give up more than $29 million between 2012 and 2017. That money went to Shustek Parking Advisers and another Shustek-controlled intermediary company, both of which (at Shustek's direction) used the funds to pay the bills of The Parking REIT.

17. VRTA and VRTB received little in return for giving away nearly $30 million of their cash. Neither company had a significant prior ownership interest in The Parking REIT, and neither received any equity interest in that business in exchange for the funds. Despite the amount of money involved and the complexity of the payment trails, Shustek disregarded even the most basic elements of legitimate, arms-length transactions: There were no written contracts governing the transfers of money between VRTA/VRTB and the Shustek-intermediary companies, nor any written agreements between VRTA/VRTB and The Parking REIT. Shustek also provided no written cap on the amount of money that could be transferred from VRTA or VRTB, and omitted any fixed repayment schedule or interest rate for the $29 million. Not surprisingly, VRTA and VRTB were never fully repaid.

18. The money drain hobbled VRTA and VRTB in conducting the businesses they told investors they were engaged in—investing in mortgage loans and real property. In agreements publicly filed with the SEC, the Vestin Adviser pledged to protect "[VRTA's and VRTB's] investments consistent with [their] basic investment objectives." Those agreements also prohibited the Vestin Adviser from making "it impossible to carry on the ordinary business of" VRTA and VRTB, or "possess[ing] [VRTA or VRTB] property or assign[ing] the rights of [VRTA or VRTB] in property for other than a [VRTA or VRTB] purpose." But those promises did not stop Defendants from directing VRTA and VRTB to pour their cash into transactions that bore no resemblance to their "basic investment objectives."

19. Shustek hid this scheme from the public and investors. Throughout the years that he was using VRTA's and VRTB's money to benefit The Parking REIT, Shustek knowingly or recklessly directed VRTA and VRTB to publish false and misleading statements about these companies and these transactions in their public filings. In particular, Shustek approved numerous filings that falsely described the money siphoned out of VRTA and VRTB as "loans" in spite of the defects described in paragraph 17. Furthermore, many public filings misrepresented that almost all of VRTA's and VRTB's funds went to real estate investments and mortgage loans when, in reality, Shustek was using that money for his newer enterprise. Shustek personally signed about two dozen reports filed with the SEC containing this misinformation, including:

- Two annual reports (Form 10-Ks) and six quarterly reports (Form 10-Qs) for VRTA, filed between 03/31/2014 and 11/16/2015;
- Three annual reports (Form 10-Ks) and ten quarterly reports (Form 10-Qs) for VRTB, filed between 11/14/2013 and 11/10/2016; and
- "Definitive Proxy Statements" (Form DEF 14A) for VRTA and VRTB, filed on 10/26/2015 and 01/17/2017.

(*See* Appendix A.)

20. Shustek continued to knowingly or recklessly direct VRTA and VRTB to publish false and misleading statements about the $29 million payment scheme after the switch from trading on the Nasdaq to trading OTC. Shustek signed approximately 18 OTC reports that

contained the same type of misinformation included in the SEC filings: twelve VRTA OTC quarterly and annual reports filed between 04/11/2016 and 04/16/2019; and six VRTB OTC quarterly and annual reports filed between 12/06/2017 and 04/16/2019. (*See* Appendix A.)

21. Shustek's and Vestin Mortgage's use of VRTA and VRTB's assets to fund The Parking REIT also breached the fiduciary duties that they owed as investment advisers to VRTA and VRTB.

### C. Shustek Arranged for Repeated Re-Sales of the Same Buildings Between Affiliated Companies, Resulting in Significant Losses for VRTA and VRTB, and Made Misleading Statements About the Transactions in Public Filings and to VRTA's and VRTB's Boards of Directors.

22. Shustek also diverted money from VRTA and VRTB through repeated sets of sales of the same commercial buildings, so that Shustek could fund The Parking REIT and benefit himself. From 2013 through 2017, Shustek directed that the same six Las Vegas office buildings change hands multiple times between VRTA/VRTB, The Parking REIT, and Shustek's longtime business partner's companies. Shustek structured the transactions so that VRTA and VRTB lost money on these transactions while everyone else – including himself – profited at their expense. Indeed, The Parking REIT made money on the sales, the business partner's company got millions of dollars in loans forgiven, and Shustek pocketed more than $1.75 million in fees and commissions.

23. The buildings were constructed in about 2007 by the business partner with the help of a substantial loan from VRTA and VRTB. In 2013, Shustek arranged for The Parking REIT to purchase the buildings from his business partner's company in order to expand its portfolio of assets and thus make The Parking REIT more attractive to investors. As part of the payment, Shustek caused VRTB to forgive the approximately $10 million that his business partner's company still owed on the original construction loan and VRTB got nothing in return.

24. A year later, in 2014, Shustek again arranged for a swap of assets that benefited The Parking REIT, but not VRTA or VRTB. This time, he caused The Parking REIT to sell the buildings to VRTA and VRTB, which together paid The Parking REIT approximately $1.4 million in cash as well as ownership stakes in a number of other properties valued at $53.6 million—even

though VRTA and VRTB had no reason for buying the buildings other than to help The Parking REIT.

25. The property churn continued in 2016 and 2017. In 2016, Shustek had VRTA and VRTB sell the buildings back to another of his business partner's companies at a loss of approximately $9 million. While VRTA and VRTB retained the right to buy back the buildings in a year, Shustek soon directed them to sell that repurchase right to a different entity controlled by his business partner, thereby cementing his business partner's ownership of the buildings. In exchange, VRTA and VRTB received some stock in The Parking REIT (which was difficult to value or monetize, since The Parking REIT was not publicly traded), along with less than $900,000 in cash. To make matters worse, VRTA and VRTB had to pay Shustek approximately $1.65 million in commissions for setting up these money-losing transactions.

26. To obtain this $1.65 million commission, Shustek lied to VRTA's and VRTB's respective boards of directors by declaring that he was "entitled to a 3% commission." But these sales did not qualify for a commission under the relevant contracts. Indeed, the CFO of both VRTA and VRTB even told Shustek that he was not entitled to the commissions. But following Shustek's misrepresentations, the VRTA and VRTB boards of directors approved the payments—and the CFO resigned over the issue. For one of the commission payments in November 2017, Shustek paid himself the commission first, then later got approval from the boards of directors of VRTA and VRTB without telling them he had already taken the money.

27. The net effects of this Shustek-created property carousel were that The Parking REIT received properties valued at $53.6 million and $1.4 million in cash from VRTA and VRTB while Shustek himself pocketed at least $1.75 million in commissions and fees. On the other hand, VRTB gave up the $10 million still owed on its construction loan; VRTA and VRTB paid millions buying other, more desirable real estate (parking and storage facilities) that ended up with The Parking REIT; and VRTA and VRTB paid Shustek's $1.65 million commission.

28. Shustek and Vestin Mortgage designed the series of transactions to favor their own interests above VRTA's and VRTB's, thereby breaching the fiduciary duties they owed as investment advisers to VRTA and VRTB.

29. As with the $29 million payment scheme outlined in Section B above, Shustek knowingly or recklessly directed VRTA and VRTB to publish false and misleading statements in their SEC and OTC filings about the repeated sales of the six properties and the resulting payments to Shustek. The filings purport to disclose all transactions with Shustek and related parties, but, in fact, omit Shustek's $1.65 million commission payment. Shustek signed all of these public filings containing the misinformation, specifically:

- Three VRTB quarterly reports (Forms 10-Q), filed between 05/18/2016 and 11/10/2016;
- VRTB's "Definitive Proxy Statement" (Form DEF 14A), filed 01/17/2017;
- Three VRTA OTC annual and quarterly reports, filed between 04/11/2016 and 08/19/2016;
- Two VRTB OTC quarterly reports filed on 12/06/2017; and
- VRTB's "Definitive Proxy Statement" (Form DEF 14A), filed 01/17/2017.

(*See* Appendix A.)

30. Some of the VRTA and VRTB public filings were also false and misleading as to the 2017 property transactions because they failed to disclose the key fact that Shustek's business partner was the final buyer. Although the buildings had been sold four times in as many years, they had effectively taken a round-trip and ended up in 2017 back with their original owner, Shustek's business partner. Again, Shustek signed these public filings with the misinformation:

- VRTB's "current report" (Form 8-K) filed to signify a major event, filed 02/01/2017;
- Two VRTA OTC annual and quarterly reports, filed between 12/14/2017 and 05/15/2018; and
- Six VRTB OTC annual and quarterly reports, filed between 12/06/2017 and 04/16/2019.

(*See* Appendix A.)

### D. Shustek Deceived the VRTA and VRTB Boards of Directors into Paying Him $8 Million in a Securities Transaction.

31. In yet another effort to put money belonging to VRTA and VRTB into his own pocket, and yet another breach of his fiduciary duty as their investment adviser, Shustek deceived their boards of directors in order to get them to approve the companies' purchase of the Vestin Adviser for approximately $8.7 million. Because Shustek was the sole owner of the Vestin Adviser, he would personally receive this money over three years.

32. Shustek also transferred some stock from The Parking REIT to VRTA and VRTB as part of the deal, but this did not change the big picture—that the purchase price made no economic sense for VRTA and VRTB. Both companies had been failing for years, *and their combined total worth* (as measured by market capitalization) *was under $7 million,* well less than the $8.7 million price tag for the Vestin Adviser. But Shustek convinced the boards of directors to approve that price by making the Vestin Adviser appear more valuable than it was. On December 20, 2017, he provided to the VRTA and VRTB boards an expert consultant's report, purporting to value the Vestin Adviser at $32 million. But this valuation was premised on false information Shustek provided to the consultant. Specifically, Shustek told the consultant to assume in his calculations that the Vestin Adviser would receive $1.5 million in loan origination fees during 2017, increasing by five percent each year thereafter.

33. Shustek knowingly or recklessly provided the false report to the boards of directors, even though the assumptions that he had supplied to the consultant were false for three reasons. First, as Shustek knew by the time he presented the consultant's report to the boards in late December 2017, the Vestin Adviser had actually only obtained about *one-tenth* of the origination fees that the report assumed ($150,000, not $1.5 million). Second, as Shustek knew or was reckless in not knowing, the assumption of a five percent increase in fees each year had no reasonable basis because Shustek had already shifted the business of VRTA and VRTB away from loan origination (and he therefore expected lower fees in the future). Finally, Shustek knew or was reckless in not knowing the rosy predictions of consistent growth were undermined by VRTA's and VRTB's poor financial performances in the last several years.

**E. Shustek Made a False and Misleading Statement in a VRTB SEC Filing Regarding a Conspiracy to Falsify VRTB's Tax Returns.**

34. Shustek's close associates—including a VRTB director and a VRTB accountant who was also the CFO of The Parking REIT—pled guilty to a tax-fraud-and-illicit-payment scheme involving the falsification of VRTB's 2013 tax return. According to the associates' guilty pleas, which were made in 2019 and 2020, the VRTB tax return falsely claimed that certain companies (the "Tax Fraud Companies") paid VRTB approximately $11 million, and these fictional payments

were used to reduce the Tax Fraud Companies' own tax bills. Shustek's associates were paid by the Tax Fraud Companies for falsifying the VRTB return, and one of them wired approximately $300,000 of that money to Shustek.

35.     On May 18, 2016, VRTB filed a Form 10-Q with the SEC that contained a false and misleading statement regarding the tax scheme, which Shustek personally signed. Specifically, the filing misleadingly suggested that an outside company was responsible for the false return and that it was unknown if the company's directors or officers had any involvement. But Shustek knew, or was reckless in not knowing, at the time he signed the filing—because VRTB's accountant, who was also an officer of the affiliated Parking REIT, had told him so—that the accountant and VRTB's director were responsible for the scheme. Additionally, as discussed above, Shustek personally received a payment from the VRTB accountant which came from the scheme.

## FIRST CLAIM FOR RELIEF

*Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder*

*by Defendants Shustek and Vestin Mortgage*

36.     The SEC re-alleges and incorporates by reference paragraph nos. 1 through 35.

37.     By engaging in the conduct described above, Defendants Shustek and Vestin Mortgage, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, with scienter:

(1)     employed devices, schemes, or artifices to defraud;

(2)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

(3)     engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

38.     By reason of the foregoing, Defendants Shustek and Vestin Mortgage violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

*Violations of Section 17(a) of the Securities Act*

*by Defendants Shustek and Vestin Mortgage*

39. The SEC re-alleges and incorporates by reference paragraphs nos. 1 through 35.

40. By engaging in the conduct described above, Defendants Shustek and Vestin Mortgage, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (1) with scienter, employed devices, schemes or artifices to defraud;

    (2) obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and

    (3) engaged in transactions, practices and courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

41. By reason of the foregoing, Defendants Shustek and Vestin Mortgage have violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

*Violations of Sections 206(1) and (2) of the Investment Advisers Act of 1940*

*by Defendants Shustek and Vestin Mortgage*

42. The SEC re-alleges and incorporates by reference paragraphs nos. 1 through 35.

43. Defendants Shustek and Vestin Mortgage were at all relevant times investment advisers within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

44. Defendants, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly:

    (1) with scienter, employed devices, schemes, and artifices to defraud a client or prospective client; and

(2) engaged in transactions, acts, practices and courses of business which operated as a fraud or deceit upon any client or prospective client.

45. By reason of the foregoing, the Defendants Shustek and Vestin Mortgage have violated, and unless restrained and enjoined will continue to violate, Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

46. By reason of the foregoing, Defendant Shustek also knowingly or recklessly provided substantial assistance to Vestin Mortgage, in violating Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 [15 U.S.C. §§ 80b-6(1) and 80b-6(2)], and thereby aided and abetted such violations, and unless restrained and enjoined, will continue to aid and abet violations of these provisions.

## FOURTH CLAIM FOR RELIEF

*Aiding and Abetting Violations of Exchange Reporting Act Requirements*

*by Shustek*

47. The SEC re-alleges and incorporates by reference Paragraph Nos. 1 through 35.

48. As an issuer of securities registered with the SEC, VRTB was required to file with the SEC quarterly reports, in accordance with applicable rules and regulations, which included information as necessary to make the statements made in the reports, in the light of the circumstances under which they were made not misleading. By the conduct described above, VRTB failed to do so, in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 13a-13, and 12b-20 thereunder [17 C.F.R. §§ 240.13a-13 and 240.12b-20].

49. By reason of the foregoing, Defendant Shustek knowingly or recklessly provided substantial assistance to VRTB, in violating Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 13a-13 and 12b-20 thereunder [17 C.F.R. §§ 240.13a-13 and 240.12b-20], and thereby aided and abetted such violations, and unless restrained and enjoined, will continue to aid and abet violations of these provisions.

# PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that this Court:

## I.

Enter an order enjoining Defendants Shustek and Vestin Mortgage from violating Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. § 77q(a)], and enjoining Defendant Shustek from violating Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 13a-13 and 12b-20 thereunder [17 C.F.R. §§ 240.13a-13 and 240.12b-20].

## II.

Enter an order, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], prohibiting Defendant Shustek from serving as an officer or director of any entity having a class of securities registered with the SEC pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## III.

Enter an order prohibiting Defendant Shustek from participating in an offering of penny stock, pursuant to Section 21(d)(6)(A) of the Exchange Act [15 U.S.C. § 78u(d)(6)(A)] and Section 20(g)(1) of the Securities Act) [15 U.S.C. § 77t(g)(1)].

## IV.

Enter an order requiring Defendants Shustek and Vestin Mortgage to each disgorge their respective ill-gotten gains, plus prejudgment interest thereon.

## V.

Enter an order requiring Defendants Shustek and Vestin Mortgage to each pay civil penalties pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)(3)], Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VII.

Grant such other and further relief as this Court may determine to be just, equitable, and necessary.

Dated: July 29, 2021

/s/ *Ruth Hawley*
Ruth Hawley
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

# Appendix A

## False and Misleading Filings

VRTA Form 10-K, filed 03/31/2014
VRTA Form 10-Q, filed 05/14/2014
VRTA Form 10-Q, filed 08/13/2014
VRTA Form 10-Q, filed 11/13/2014
VRTA Form 10-K, filed 03/31/2015
VRTA Form 10-Q, filed 05/12/2015
VRTA Form 10-Q, filed 08/14/2015
VRTA Form DEF 14A, filed 10/26/2015
VRTA Form 10-Q, filed 11/16/2015
VRTA annual report, filed 04/11/2016
VRTA quarterly report, filed 05/20/2016
VRTA quarterly report, filed 08/19/2016
VRTA quarterly report, filed 11/17/2016
VRTA quarterly report, filed 04/17/2017
VRTA quarterly report, filed 12/14/2017
VRTA annual report, filed 05/15/2018
VRTA quarterly report, filed 06/04/2018
VRTA quarterly report, filed 10/05/2018
VRTA amended quarterly report, filed 10/05/2018
VRTA quarterly report, filed 11/06/2018
VRTA annual report, filed 04/16/2019

VRTB Form 10-Q, filed 11/14/2013
VRTB Form 10-K, filed 03/31/2014
VRTB Form 10-Q, filed 05/14/2014
VRTB Form 10-Q, filed 08/13/2014
VRTB Form 10-Q, filed 11/13/2014
VRTB Form 10-K, filed 03/31/2015
VRTB Form 10-Q, filed 05/12/2015
VRTB Form 10-Q, filed 08/14/2015
VRTB Form 10-Q, filed 11/16/2015
VRTB Form 10-K, filed 03/30/2016
VRTB Form 10-Q, filed 05/18/2016
VRTB Form 10-Q, filed 08/05/2016
VRTB Form 10-Q, filed 08/15/2016
VRTB Form 10-Q, filed 11/10/2016
VRTB Form DEF 14A, filed 01/17/2017
VRTB Form 8-K, filed 02/01/2017

VRTB quarterly report, filed 12/06/2017 (for the period ending in June 2017)
VRTB quarterly report, filed 12/06/2017 (for the period ending in September 2017)
VRTB annual report, filed 05/15/2018
VRTB quarterly report, filed 06/04/2018
VRTB quarterly report, filed 10/05/2018
VRTB quarterly report, filed 11/13/2018
VRTB annual report, filed 04/16/2019